Compiler

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, ) | **CRIMINAL CASE NO. CM0868-11** |
| vs. ) | |
| ) | **DECISION AND ORDER** |
| JONES NAKAMURA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

This matter came before the Honorable James L. Canto II on the Defendant's second motion to reconsider, filed December 11, 2012. Oral arguments were heard on January 7, 2013. Assistant Attorney General Gabrielle L. Rossi, Esq. appeared on behalf of the Government and Assistant Public Defender Suresh Sampath, Esq. represented the Defendant. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with driving under the influence of alcohol and reckless driving based upon the following events. On August 13, 2011 at 9:55 p.m., Guam Police Officer Art S. Calvo observed Defendant's vehicle on the side of the road in what appeared to be a single-car collision with the curb. (Testimony of Art S. Calvo, Record Log at 3:20, Jan. 7, 2012.) Officer Calvo broadcasted a call on his police radio for backup and stopped his car at the scene in order to direct traffic around the accident. *Id.* At 9:58 p.m., Officer Calvo approached Defendant who was standing next to the accident. *Id.* Officer Calvo could smell alcohol on Defendant's breath and Defendant affirmed that he had been drinking beer. *Id.*

After Officer Calvo spoke with Defendant, Guam Police Officer Ramon Q. Sablan arrived at the scene and observed Defendant had bloodshot, watery eyes and smelled of alcohol. (Testimony of Ramon Q. Sablan, Record Log at 3:15, Jan. 7, 2012.) Officer Calvo asked Defendant if he were willing to participate in standardized field sobriety tests, and Defendant replied "yes". (Testimony of Art S. Calvo, Record Log at 3:20, Jan. 7, 2012.) Defendant

alleges he was told to take the field tests and that he would have refused to participate if given the choice. (Declaration of Jones Nakamura, Mar. 13, 2012.)[1] Defendant allegedly failed the standardized field sobriety tests and was arrested at 10:15 p.m. (Testimony of Art S. Calvo, Record Log at 3:20, Jan. 7, 2012.)

On March 13, 2012, Defendant moved to suppress all evidence obtained from the investigative detention because it lasted longer than fifteen (15) minutes in violation of 8 GCA § 30.30. Defendant asserted that his initial detention was an unreasonable seizure and that all evidence obtained during or as a result of the seizure must be suppressed. The Court denied suppression on the grounds that probable cause to arrest appeared before fifteen minutes of detention elapsed. (Decision and Order, Jun. 13, 2012.) On July 2, 2012, Defendant filed a motion to reconsider because disputed facts were considered as undisputed. On reconsideration, the Court denied suppression because the disputed facts did not change its probable cause analysis. (Decision and Order, Oct. 2, 2012.) The matter was thereafter reassigned to Judge James L. Canto II.

On December 11, 2012, Defendant filed a second motion to reconsider on the basis that material facts remain in dispute. The Government agreed that an evidentiary hearing is necessary pursuant to *People v. Santos*, 1999 Guam 1 ¶¶ 16-25 and further argued that the Court's prior probable cause analysis must be applied pursuant to the law of the case doctrine.

## DISCUSSION

**1. Reconsideration and the Law of the Case**

The law of the case doctrine generally precludes a court from reconsidering an issue it has already decided unless: 1) the first decision is clearly erroneous; 2) the law, evidence or other circumstances have changed; or 3) manifest injustice would result. *People v. Hualde*, 1999 Guam 3 ¶ 13. However, the trial court, "always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders," and the, "[l]aw of the case does not ...

---

[1] Defendant swore to the truth of this written declaration under penalty of perjury at the Jan. 7, 2013 suppression hearing and the Court shall consider this affidavit as testimony per 6 GCA §§ 4308, 7301 & 7302. *See People of*

preclude the court from reconsidering an earlier ruling if the court feels that the ruling was probably erroneous and more harm would be done by adhering to the earlier rule than from the delay incident to a reconsideration and the possible change in the rule of law to be applied." *People v. Gutierrez*, 2005 Guam ¶ 40 n. 7 (*quoting Chun v. Board of Trustees of Employees' Retirement System of State of Hawaii*, 992 P.2d 127, 136 (Hawai'i 2000)). Furthermore, "[a] judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case … ) if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *Id.* (*quoting Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)).

In this case, the Government asserts that the Court cannot reexamine the suppression analysis of the previously assigned judge. The Court does not agree. The law of the case doctrine should not be applied here where new testimony is considered for the first time. Based upon the discussion *infra*, the Court holds a strong and reasonable conviction that the earlier analysis was incorrect. Furthermore, a reexamination of the suppression decision and a rescinded order shall not cause undue harm before trial. *Cf. Avitia*, 49 F.3d at 1227-1228 (prejudice may result without notice of jury instruction). For these reasons, the Court shall grant reconsideration and reexamine the issues presented by Defendant's motion to suppress under 8 GCA § 30.30.

**2. The Stop and Frisk Statutes**

The Fourth Amendment permits brief investigative detentions that are based upon a reasonable suspicion of illegal conduct. *People v. Johnson*, 1997 Guam 9 ¶ 4 (*citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968)). This principle is codified in the "Stop and Frisk" statutes at 8 GCA Chapter 30. *See People v. Cundiff*, 2006 Guam 12 ¶ 40.

\\

*Guam v. Santos*, 1999 Guam 1 ¶ 21.

Title 8 GCA § 30.10 states:

> Whenever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person.

Title 8 GCA § 30.20 states:

> Detention pursuant to § 30.10 shall be for the purpose of ascertaining the identity of the person detained and the circumstances surrounding his presence abroad which lead the officer to believe that he had committed, was committing, or was about to commit a criminal offense, but such person shall not be compelled to answer any inquiry of the peace officer.

Title 8 GCA § 30.30 states:

> No person shall be detained under the provisions of § 30.10 longer than is reasonably necessary to effect the purposes of that section, and in no event longer than fifteen (15) minutes. Such detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.

Title 8 GCA § 30.40 states:

> If at any time after the onset of the detention authorized by § 30.10, probable cause for arrest of the person shall appear, the person shall be arrested. If after an inquiry into the circumstances which prompted the detention, no probable cause for the arrest of the person shall appear, he shall be released.

Thus under Guam law, a police officer having a reasonable suspicion regarding criminal activity by a particular individual may detain that person to investigate said suspected criminal activity. 8 GCA §§ 30.10 & 30.20. When this investigative detention reveals probable cause for arrest, "the person shall be arrested." 8 GCA § 30.40. However, "in no event [shall a person be detained] longer than fifteen (15) minutes," and the person "shall be released," if no probable cause for arrest appears. 8 GCA §§ 30.30 and 30.40.

In this case, the parties dispute the application and effect of the 15 minute time limit for investigative detentions. The Government argues that any appearance of probable cause to arrest within 15 minutes removes the need to apply the time limitation. Alternatively, the Government contends that any suppression applies only to evidence obtained after 15 minutes and before arrest. Defendant asserts that if he is not arrested or released within 15 minutes

pursuant to the Stop and Frisk statutes, then all evidence from the investigative detention must be suppressed unless it comes from an independent source.

**3. Violation of the 15-Minute Time Limit**

    a. <u>Meaning of the "Stop and Frisk" Act.</u>

    Title 8 GCA Chapter 30 and the 15-minute time limit are derived from former Penal Code Sections 735 through 736.4. *See* 8 GCA § 30.10, COMMENT; Guam Pub. L. 10-99 (June 19, 1969). Former Sections 735 through 736.4 were enacted as original statutes and without any statement of legislative findings or intent. P.L. 10-99. There is an absence of controlling authority to interpret the 15 minute time limit.[2] Without clear legislative intent or authority to the contrary, the Court shall interpret the Stop and Frisk statutes according to their plain meaning. *See Guam Resorts, Inc. v. G.C. Corporation*, 2012 Guam 13 ¶ 7 ("When the plain reading of a statute is 'clear on its face' and yields to an unambiguous definition, we will not look past that plain reading."); *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 29 ("A plain reading construction is appropriate where the statute lays out specific requirements and indicates exactly what is necessary for compliance without ambiguous terms."); *People v. Lau*, 2007 Guam 4 ¶¶ 11-14.

    An examination of the plain language of the 15-minute time limit within the context of 8 GCA Chapter 30 does not reveal ambiguity or absurd and unworkable consequences. *See Sumitomo Const., Co., Ltd. v. Government of Guam*, 2001 Guam 23 ¶ 17; *People v. Flores*, 2004 Guam 18 ¶ 18. The Stop and Frisk statutes state that a person shall be detained, "in no event longer than fifteen (15) minutes." 8 GCA § 30.30. If probable cause to arrest appears, "at

---

[2] For example, Guam law does not explicitly discredit any detention beyond the time limit nor does it conversely hold that the time limit is merely a guide for law enforcement. *Compare Florida v. Royer*, 460, U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."), *and U.S. v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."), *with U.S. v. Place*, 462 U.S. 696, 709 n.10, 103 S.Ct. 2637, 2646 (1983) ("We understand the desirability of providing law enforcement authorities with a clear rule to guide their conduct. Nevertheless, we question the wisdom of a rigid time limitation.

any time after the onset of the detention…the person shall be arrested." 8 GCA § 30.40. If probable cause does not appear, "he shall be released." *Id.* This language clearly contemplates that any investigative detention must end by arrest or release within 15 minutes. Even where probable cause to arrest appears within 15 minutes of detention, the plain language of 8 GCA § 30.30 does not allow the detention to continue beyond 15 minutes. When a person is detained without arrest for more than 15 minutes, although probable cause to arrest may appear, the Stop and Frisk statutes are violated.

To posit that probable cause arising before the expiration of 15 minutes somehow negates the statute's time limit is to say that an officer may detain an individual indefinitely without an arrest just because probable cause arose within the first 15 minutes. This would be an illogical reading of the statute that subverts its entire purpose, and one which this Court cannot reasonably adopt. The Guam Legislature has apparently narrowed the ability of any officer to graduate an investigative detention according to the demands of a particular situation, as the U.S. Supreme Court might otherwise afford in the absence of an explicit time limit. *See, e.g., U.S. v. Sharpe*, 470 U.S. 675, 685-87, 105 S.Ct. 1568 (1985). Based upon the plain meaning of the Stop and Frisk statutes, the Court holds that an investigative detention must cease by arrest or release within 15 minutes of its initiation.[3]

The Government argues that a defendant's voluntary consent to undergo a Standardized Field Sobriety Test vitiates the effect of 8 GCA § 30.30, tolling the 15-minute clock.[4] However, the plain language of the statute is inescapable. It states in pertinent part: "No person shall be detained … longer than is reasonably necessary to effect the purposes of [Section 30.10], and in no event longer than fifteen (15) minutes. 8 GCA § 30.30 (emphasis added). This

---

Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation.").

[3] The Court recognizes this law's possibly impairing effect upon meaningful law enforcement investigation technique; however, this Court is duty-bound to administer the law as the Legislature intended and may do no more. The only alternative is for the Legislature to re-examine whether the statute indeed withstands an effective application to real-world circumstances within the reasonable balance between individual liberty interests and the Government's law enforcement interests.

[4] *See generally, People v. Santos*, 1999 Guam 1 ¶¶ 33-37; *People v. Chargualaf*, 2001 Guam 1 ¶¶ 14-15

unconditional language unequivocally imparts that no circumstance may serve as an exception to the time limit, be it exigency or even an express waiver by the detainee.

b. Application to the Facts of this Case.

In order to apply this rule to the present case, the Court must further examine the difference between an investigative detention and an arrest. Under Guam law, "a person has been seized under the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Cundiff*, 2006 Guam 12 at ¶ 21 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980)). An investigative detention under 8 GCA Chapter 30 is consistent with a Fourth Amendment seizure. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 40; *Terry*, 392 U.S. at 16 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). For this reason, an investigative detention occurs when a reasonable person would believe he is not free to leave under the circumstances.

Guam law defines an arrest as, "an actual restraint of the person, or...submission to the custody of the person making the arrest." 8 GCA § 20.10. An officer must announce the arrest pursuant to 8 GCA § 20.25, but the declaration is not an absolute requirement for a lawful arrest based upon probable cause. *Cundiff*, 2006 Guam 12 at ¶¶ 35-36 and 25-26 (*quoting People v. Maddox*, 294 P.2d 6, 9 (Cal. 1956); and *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964)). Any physical restraint that curtails movement constitutes an arrest. *Id.* at ¶¶ 19-20 (*quoting Sibron v. New York*, 392 U.S. 40, 67, 88 S.Ct. 1889 (1968)).[5] Even without physical restraint, a severely intrusive detention may constitute an arrest. *Id.* at ¶¶ 21-22 (*quoting Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248 (1979) (custodial interrogation is an arrest and requires probable cause)).

In this case, Officer Calvo approached and questioned Defendant at the scene of his accident at 9:58 p.m. If Defendant walked away and left the scene of his accident then he could

---

[5] *Cf. People v. Farata*, 2007 Guam 8 ¶¶ 44-45; *People v. Santos*, 2003 Guam 1 ¶ 51 (police custody ultimately determined by use of physical restraint comparable to formal arrest).

have been arrested. *See* 16 GCA § 3501. Furthermore, a traffic stop is, "unquestionably a seizure within the meaning of the Fourth Amendment." *People v. Rasauo*, 2011 Guam 1 ¶ 26 (*citing Berkemer v. McCarty*, 468 U.S. 420, 436-439 (1984)). *See also People v. Chargualaf*, 2001 Guam 1 ¶ 17. Under these circumstances, Defendant was detained pursuant to 8 GCA Chapter 30 because he could not reasonably believe that he was free to disregard the police and walk away from his traffic accident. *See Mendenhall*, 446 U.S. at 554 (no detention if person can disregard and walk away). The investigative detention lasted seventeen (17) minutes before it ended with an arrest at 10:15 p.m. For this reason, the investigative detention violated the 15-minute time limit of the Stop and Frisk statutes.

**4. The Exclusionary Remedy**

The Stop and Frisk statutes do not provide an explicit remedy for a person who is detained by law enforcement for more than 15 minutes. *See* 8 GCA Chapter 30. However, an unreasonable investigative detention implicates the Fourth Amendment under Guam law. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 40; *Chargualaf*, 2001 Guam 1 at ¶ 20 ("[T]he Fourth Amendment is only at issue where the police detain or seize an individual while posing investigative questions.") (*citing Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983)). When the Fourth Amendment is violated by an unlawful seizure or investigative detention, evidence obtained during the detention must be suppressed pursuant to the exclusionary rule. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 51; *Terry*, 392 U.S. at 13-15. Evidence that is obtained during or derived from an unlawful detention must be suppressed pursuant to the fruit of the poisonous tree doctrine. *Cundiff*, 2006 Guam 12 at ¶ 41 (*citing Wong Sun v. United States*, 371 U.S. 471 (1963); *People v. Santos*, 2003 Guam 1 ¶ 64).[6]

---

[6] *See also Nix v. Williams*, 467 U.S. 431, 442-443, 104 S.Ct. 2501, 2508 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.").

The Stop and Frisk Act's 15 minute time limit constitutes a greater restriction upon police activity than the Fourth Amendment. *See* discussion *supra* and *Place*, 462 U.S. at 709 ("we decline to adopt any outside time limitation for a permissible *Terry* stop"). For this reason, the Constitution may not protect against a violation of 8 GCA § 30.30, even though it implicates the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598 (2008) (evidence is not excluded under the Fourth Amendment for the violation of a state law that restricts police intrusion more narrowly than the Constitution). However, the Organic Act of Guam incorporates language identical to the Fourth Amendment and the Court is persuaded by aforementioned federal cases that apply the exclusionary rule in order to remedy unreasonable searches and seizures. *Compare* 48 U.S.C. § 1421b(c) *with* U.S. Const. amend. IV (identical language). *See also People v. Roten*, 2012 Guam 3 ¶ 16; *Macris v. Guam Memorial Hosp. Authority*, 2008 Guam 6 ¶ 25 (federal cases interpreting identical language are persuasive authority). Furthermore, the Guam Legislature clearly considered exclusion to be an appropriate remedy for a violation of the Stop and Frisk Act. *See* 8 GCA § 30.60 (evidence obtained from a frisk is not admissible when a detention lasts longer than 15 minutes). *Cf. Moore*, 553 U.S. at 167 (Virginia does not require suppression of evidence obtained in violation of state law).

On these grounds, the Court shall apply the ordinary exclusionary rule and fruit of the poisonous tree doctrine to the Stop and Frisk statutes and suppress all evidence obtained or derived from an unlawful detention that exceeds the time limit; specifically meaning any and all evidence obtained during the entire detention, and not just that evidence obtained after the 15-minute time limit has elapsed.

In order to suppress evidence under the fruit of the poisonous tree doctrine, the Court must determine, "whether the challenged evidence was come at by exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Cundiff*, 2006 Guam 12 at ¶ 41; *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Segura v. United States*, 468 U.S. 796, 805-805, 104 S.Ct. 3380, 3385 (1984)). *See also Segura*, 468 U.S. at 815 ("[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of

the discovery of the evidence."). The coercive effect of an illegal seizure may attenuate and dissipate with the passage of time. *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Oregon v. Elstad*, 470 U.S. 298, 311-312, 105 S.Ct 1285, 1294 (1985)).

In this case, the unlawful Stop and Frisk detention ended when Defendant was arrested at 10:15 p.m. All evidence obtained during the unlawful detention shall be suppressed pursuant to the exclusionary rule. After the arrest at 10:15 p.m., Defendant was transported to the police station where he may have made statements and performed a breath test.[7] The short passage of time between the illegal detention and any evidence collected at the police station by itself does not likely dissipate and purge the taint of the illegality. *See Brown v. Illinois*, 422 U.S. 590, 604-605, 95 S.Ct. 2254, 2262 (1975) (statement separated from illegal arrest by less than two hours does not purge the taint of illegal arrest). Furthermore, any implied consent warning or *Miranda* warning by itself does not purge the taint of the illegal detention. *Id.* at 601-603. In order to determine whether Defendant's possible statements or breath test are purged of the taint of the illegal detention, the Court should consider the totality of the circumstances, including: 1) the temporal proximity between the illegal detention and the evidence; 2) the presence of intervening circumstances; and 3) particularly, the purpose and flagrance of the illegal conduct. *Chargualaf*, 2001 Guam 1 at ¶ 53 (*citing Brown*, 422 U.S. at 603-604).

As discussed above, the close temporal proximity between the illegal detention and the evidence collected at the police station does not purge the taint of illegality. Furthermore, there are no intervening circumstances to purge the taint of the illegal detention. *See Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626 (1972) (lineup identification is purged of illegal arrest when conducted with counsel and after magistrate hearing to advise rights and commit under bail). However, it is particularly important here that the illegal detention did not have an illegal purpose or constitute flagrant illegal conduct. During the period of unlawful detention Officer Calvo observed indicators of Defendant's intoxication, questioned him about

intoxication, conducted standardized field sobriety tests, and arrested Defendant when he failed the tests. These actions are reasonably tailored to quickly confirm or dispel the suspicion that Defendant drove under the influence of alcohol. *See U.S. v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985). On this basis, the 17 minute detention was not conducted for an illegal purpose nor did it constitute flagrant illegal conduct and any evidence obtained under custody at the police station is purged of the taint of the illegal detention.[8]

For all of these reasons, the police obtained custodial evidence by means sufficiently distinguishable to be purged of the primary taint of the illegal detention, and the evidence shall not be excluded under the fruit of the poisonous tree doctrine. *See Cundiff*, 2006 Guam 12 at ¶ 41.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendant's motion to suppress is hereby GRANTED and all evidence obtained from the onset of the detention until his arrest shall not be admissible against Defendant.

**SO ORDERED this** _28TH_ **day of March, 2013.**

**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

I do hereby certify that the fore... is a full true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam Dated at Hagåtña, Guam

MAR 2 8 2013

James R. Borja
Deputy Clerk, Superior Court of G...

---

[7] At the evidentiary hearing, the Government presented no evidence of the events after the arrest at 10:15 p.m. However the Complaint charges Defendant with driving a motor vehicle with more than 0.08% by weight of alcohol in his blood on the basis of a breath test performed at the police station. (Complaint, 2, Declaration, Aug. 15, 2011.)

[8] One example of an illegal purpose or flagrant illegal conduct under the Stop and Frisk statutes is a detention and investigation that exceeds the scope of the officer's reasonable suspicions, and which reveals evidence of wholly unrelated conduct after more than 15 minutes, only because the detention continued indefinitely. *See generally Dunaway*, 442 U.S. at 218-219 (confession inadmissible where defendant was seized without probable cause in the hope that something might turn up).